## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| WILFREDO RODRIGUEZ individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JOHN PAULSON; SOLERA; PERLA RESTAURANT; DELICIAS RESTAURANT; SERENO BEACH BAR & GRILL; KOMAKAI SUSHI BAR; AROMA CAFE; LA CONCHA HOTEL TOWER, INC.; CONDADO DUO LA CONCHA SPV, LLC; CONDADO DUO LA CONCHA CASINO SPV, LLC; CONDADO DUO LA CONCHA HOTEL TOWER SPV, LLC; FAHAD GHAFFAR; 1919 RESTAURANT; OLA OCEANFRONT; TACOS & TEQUILA; VC LOUNGE; VERITAS WINE & COGNAC BAR; MARABAR MARTINI BAR AND LOUNGE; AVO LOUNGE; CONDADO DUO VANDERBILT HOTEL TOWERS, INC.; CONDADO DUO VANDERBILT HOTEL TOWERS SPV, LLC; CONDADO DUO VANDERBILT SPV, LLC; INTERNATIONAL HOSPITALITY GROUP, INC.; and JOHN DOE'S 1-50,<br><br>Defendants. | CIVIL No. 18-cv-01257 (DRD) |

## CO-DEFENDANTS PAULSON, GHAFFAR AND CONDADO DUO LA CONCHA HOTEL TOWER RENEWED MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(B)(6) AND MEMORANDUM OF LAW IN SUPPORT THEREOF

**TO THE HONORABLE COURT**:

    **COME NOW** co-defendants John Paulson, (hereinafter, "Paulson") Fahad Ghaffar, (hereinafter, "Ghaffar") and Condado Duo La Concha Hotel Tower SPV, LLC, (hereinafter, "Condado Duo La Concha Hotel Tower") hereinafter collectively known as "co-defendants," through the undersigned counsel, and respectfully state and pray as follows:

# I.      INTRODUCTION

The instant action[1] sets forth a textbook example of a plaintiff and counsel trying to exploit one of the most tragic chapters in Puerto Rico's history for the sole purpose of economic gain. As is well-known, Puerto Rico was partially hit last September by Hurricane Irma, which left more than one million residents on the Island without power. A mere two weeks later, Puerto Rico was decimated on September 20th, 2017 by Hurricane María, a Cat-4/5 hurricane whose strength and ferocity perhaps had never been witnessed in Puerto Rico's history and which left a path of destruction whose effects unfortunately are still seen today in parts of the Island. For months following Hurricane María, thousands in Puerto Rico were left without water, electricity, internet service and any other means of communication and, unfortunately, thousands lost their lives as a direct or indirect result of this natural phenomenon. Many businesses and hotels were destroyed and even as of today remain closed. Yet, amid all this chaos and destruction, two hotels in the heart of Condado, Puerto Rico, managed to open their doors to locals and strangers alike, many of whom were first responders in Puerto Rico solely to assist with recovery and relief efforts, while simultaneously maintaining much-needed employment for hundreds of Puerto Rican families. One of these hotels was La Concha Resort, where Plaintiff alleges that on November 4th, 2017, he was illegally charged the state 10.5% sales and use tax (SUT) the collection of which had been temporarily exempted by the local authorities.[2] Based on this single

---

[1] Co-defendants Paulson, Ghaffar and Condado Duo La Concha Hotel Tower have already moved to dismiss this action based on the original Complaint, and co-defendants now renew this motion in light of the *First Amended Class Action Complaint* filed on August 27, 2018, Dkt. No. 18. Essentially, Plaintiff amended the complaint to merely include that "[o]n November 4, 2017, Defendants collected at least $2,405.71 worth of taxes" (*see* Amended Complaint, ¶¶ 46, 97, 99, 115), a fact provided by co-defendants in their *Motion to Dismiss Pursuant to Fed.R.Civ. 12(B)(6) and Memorandum of Law in Support Thereof*, Dkt. No. 13. On this matter, it should be noted that Plaintiff does not mention that said amount comprises of prepared foods and other products and services that **were** subject to the state SUT. In any event, neither the Complaint nor the Amended Complaint can survive the assessment this Court must perform pursuant to the applicable standards.

[2] Concretely, the Plaintiff paid SUT in the amount of $7.20. A review of the attached sales receipt for Plaintiff's transaction at Solera shows that the state sales tax collected in the transaction totaled $14.39, of which Plaintiff paid half since the check was split between two credit cards. *See* Receipt of Plaintiff's November 4th Transaction, attached as **Exhibit A.** To the extent that Plaintiff makes specific reference to this transaction, bases his claims on this transaction and evidently has a copy of the receipt, the Court may properly consider this document in ruling on defendants' Motion to Dismiss without need for conversion as there is no doubt that this receipt is integral to the Compliant and was relied on by Plaintiff in framing his Complaint. *See* Trans-Spec Truck Serv. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008), *quoting* Beddall v.

transaction a mere month and a half after María's passing, Plaintiff rages against the appearing defendants and many others, accusing well-known and respected individuals and entities of being co-conspirators and engaging in a pattern of racketeering activity, to obtain financial gain.

It is not a secret that, during the time in which the only transaction alleged in the Complaint[3] occurred, businesses in Puerto Rico faced great challenges, mainly because the Island's electrical grid was unstable and unreliable. This situation also affected the businesses operated by Defendants, who made heroic efforts to keep their doors open to provide essential services to the public. Plaintiff completely ignores this context and threading from a single unintentional transaction attempts to fabricate a whole plot of what, in the end, are mere uninformed speculations and conjecture without any factual basis or support. And there is where Plaintiff's undertaking crosses the line of reasonability. Events of one day, which represents $2,405.71[4] worth of SUT, that under Puerto Rico law could be resolved through a simple administrative procedure, unduly and frivolously used by Plaintiff to file a meritless federal RICO action in the hopes of obtaining an unwarranted economic benefit. This is evident when we analyze the allegations of the Complaint, which constitute threadbare recitals of the elements of the causes of action asserted therein, while failing to provide specific facts in support of Plaintiff's claims.

Accordingly, not only has Plaintiff made sweeping assertions based on a single transaction, it is also evident that Plaintiff has done so in brazen disregard of his duties to this Court as a litigant. Plaintiff did not bother to properly investigate the circumstances that may have led to the single

---

State St. Bank & Trust Co., 137 F.3d 12, 16-17 (1st Cir. 1998).

[3] Every reference in this Motion to Dismiss to the Complaint shall include the *First Amended Class Action Complaint*.

[4] Cognizant of our professional responsibility under Rule 11 of the Federal Rules of Civil Procedure, we want to point out that the SUT revenues collected from all locations of La Concha on November 4th, 2017 was $2,405.71, amount which comprises of prepared foods and other products and services that were subject to the state SUT. However, the SUT on prepared foods was only collected on that date due to an involuntary error. In addition, all collected taxes were rendered and fully paid to the Treasury Department.

transaction on which he anchors his Complaint. He fails to provide any details on the sole purported act from which *racketeering* and *conspiracy* theories are conjured. Plaintiff similarly lays no factual support to, at least circumstantially, demonstrate that an agreement existed between the defendants to benefit economically from the temporary suspension of the SUT collection in prepared foods. The Complaint is, in itself, a sign of a poor effort by Plaintiff and counsel to verify the very existence of the defendant companies, many of which do not exist (an easy corroboration through governmental electronic systems would have sufficed) and the relationship, if any, between them and the individual defendants. Apart from generically arguing that the individual defendants, including the appearing ones, are investors in some of the defendant corporations, the Complaint lacks a single fact that specifically establishes their role in the operation of the entities and the relationship between them. Although it is alleged that one of the companies is an agent or representative of others, it is not specified to whom or for what purposes. The Complaint also lacks allegations about meetings, oral or written communications through any means or any other data that establishes the existence of an agreement to carry out an alleged illicit objective. As will be explained and briefed in detail below, Plaintiff's Complaint cannot survive the assessment this Court must perform pursuant to the applicable standards.

Plaintiff brings this "Class Action Complaint" against the appearing defendants and many others, pursuant to this Court's federal jurisdiction (28 U.S.C. §1331), setting forth claims for alleged violations of the Racketeer Influenced and Corrupt Organizations Act (RICO Act) and a federal wire fraud statute. *See* 18 U.S.C.A. §§1961-1968; 18 U.S.C.A. §1343. In addition, Plaintiff requests this Court to exercise supplemental jurisdiction over various supplemental claims for alleged unjust enrichment, fraud and conversion, while failing to specify or state the statute or body of law under which these claims arise.

The Complaint's account of events pertaining to the sole November 4th transaction on which

Plaintiff's RICO and supplemental claims are anchored, is the following:

(i)    "Puerto Rico was devastated by the passing of both hurricanes Irma and Maria. The island laid in the wake of one of the most destructive natural events in its history. It had been left without power, running water and for many families, homes." (Dkt No. 18, ¶35);

(ii)   "The Governor of Puerto Rico, Ricardo Roselló (*sic*), declared a state of emergency and held that many regulations and laws would be provisionally stayed to bring a bit of tranquility and relief to the people affected by the hurricanes and many other people that came to Puerto Rico to help in the relief efforts." (Dkt No. 18, ¶36);

(iii)  "One of the laws that was waived was part of the general 11.5% sales tax, commonly known as "IVU", that applies to every purchase made in Puerto Rico. Via executive order the Governor of Puerto Rico waived the tax on pre-premade (*sic*) food in fast foods and restaurants for an indeterminate time. This executive order was upheld by the Secretary of Treasury through the directive DA 17-12, since September 21, 2017 and subsequently amended to extend the period until January 7, 2018 at 11:59 pm Eastern Standard Time." (Dkt No. 18, ¶37);

(iv)   "On November 4, 2017, Plaintiff Wilfredo Rodriguez was illegally charged the abated tax at Defendants' resorts." (Dkt No. 18, ¶45);[5]

(v)    "Like Plaintiff, members of the class were also illegally charged the abated tax at Defendants' resorts."[6] (Dkt No. 18, ¶45);

(vi)   "Defendants intentionally collected the sales tax without any intention of remitting it to the Treasury Department." (Dkt No. 18, ¶44);[7]

(vii)  "On November 4, 2017, Defendants collected at least $2,405.71 worth of taxes improperly.  It is highly likely that these taxes were collected from in excess of 100 customers." (Dkt No. 18, ¶46);

(viii) "On or about January 5, 2018, Plaintiff via his counsel sent a letter to Defendant John Paulson advising Paulson of the issues in this case and included a draft of the instant complaint.  No response was ever received and this case was filed on May 2, 2018." (Dkt No. 18, ¶48);

---

[5] The appearing defendants concede that the paragraph is arguably well-pled for purposes of ruling on the instant motion per the applicable standard, but vigorously reject the characterization of the collection of the sales tax on November 4th, 2017 as "illegal" and/or that defendants acted with ill intent.

[6] Plaintiff specifically alleges that he was illegally charged the suspended portion of the IVU "on the food he consumed in Solera," a restaurant located within La Concha Hotel. *See* Dkt No. 18, ¶¶4, 6.

[7] Defendants strongly deny the characterization of the acts attributed to them as "intentional".

(ix)    "Defendants collected at least $2,405.71 from hundreds of customers." (Dkt No. 18, ¶115);[8]

(x)    "The pattern of racketeering activity engaged in by Defendants consisted of a scheme executed by the aforementioned conspirators from September 21, 2017 to January 7, 2018 to collect and retain the before mentioned sales tax on prepared food that had been lifted by the direct order emitted by the Secretary of the Department of Treasury." (Dkt No. 18, ¶110).

Out of these purported events, the only well-pled allegations that arguably meet the applicable pleading standard, as established in Bell Atlantic v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009) are (i)-(iv), (viii) and (ix). As discussed below, allegations (v)-(vii) and (x) are bald assertions and unsupportable conclusions set forth by Plaintiff, devoid of any reliable context-specific or factual basis from which the alleged pattern of misconduct can be inferred. Notably, the Complaint is plagued with speculative allegations and unsupported conclusions and fails to provide facts sufficient to meet the plausibility standard of *Twombly* and *Iqbal*. For instance, a cursory review of the 128 paragraphs included in the Amended Complaint makes it patently clear that Plaintiff is unable to demonstrate with detailed or context-specific factual allegations that Defendants collected the abated tax from September 21, 2017 to January 7, 2018, other than on November 4th, 2017. Likewise, and more importantly, Plaintiff is unable to demonstrate with specific factual allegations that the collected sales tax was ***not*** remitted to the Treasury Department – instead relying on conclusory allegations – or even that any of the Defendants knew that the suspended or abated tax was being collected from customers of the defendant hotels on November 4th.

As discussed in detail below, dismissal with prejudice of the instant action is warranted under Fed.R.Civ.P. 12(b)(6) as a dispassionate examination of the Complaint makes it patently clear that, aside from the single November 4th transaction in which Plaintiff was charged the abated portion of

---

[8] Plaintiff does not mention that the collected amount comprises of prepared foods and other products and services that **were** subject to the state SUT.

the SUT tax at Solera Restaurant, the allegations of an alleged orchestrated racketeering scheme are entirely conclusory, speculative, irresponsible and outright frivolous. More importantly and putting aside the allegations, a cursory review of the Complaint reveals that Plaintiff's allegations utterly fail to "nudge [the claims] across the line from conceivable to plausible." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Likewise, Plaintiff's vague and generic supplemental claims are also deficient and should similarly be dismissed with prejudice by the Court. We explain.

## II.      APPLICABLE STANDARD

### a.   Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action against him based on plaintiff's failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To avoid dismissal, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" García-Catalán v. U.S., 734 F.3d 100, 102 (1st Cir. 2013) (quoting Fed. R. Civ. P. 8(a)(2)). In assessing a motion to dismiss, courts must ask whether the complaint states a claim to relief that is plausible on its face, accepting as true the factual averments of the complaint and drawing all reasonable inferences therefrom in the plaintiffs' favor, in order to determine whether the plaintiff has stated a claim under which relief can be granted. *See* Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61, 62 (1st Cir. 2004); Cooper v. Charter Communications Entertainments I, LLC, 760 F.3d 103, 2014 WL 3623594, at *2 (1st Cir. 2014) (citing Maloy v. Ballori-Lage, 744 F.3d 250, 252 (1st Cir. 2014)). In doing so, courts "may augment the facts in the complaint by reference to (i) documents annexed to the complaint or fairly incorporated into it, and (ii) matters susceptible to judicial notice." Rivera Feliciano, 652 F. Supp. 2d 170, 178 (citing Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir. 2008) (internal citations and quotation marks omitted); *see also* A.G. ex rel. Maddox v. v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (citing Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011)).

In order to show entitlement to relief, the factual allegations, taken as true, must state a plausible basis for relief. *See* Sepúlveda-Villarini v. Department of Education of Puerto Rico, 628 F.3d 25, 28 (1st Cir. 2010) (citing Ashcroft v. Iqbal, 556 U.S. 662 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." Id. at 29 (citing Iqbal, 556 U.S. at 663). "If the factual allegations in the Complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the Complaint is open to dismissal." Artuso v. Vertex Pharmaceuticals, Inc., 637 F.3d 1, 5 (1st Cir. 2011).

Accordingly, "[w]hen passing on a motion to dismiss, the court must follow two principles: (1) legal conclusions masquerading as factual allegations are not entitled to the presumption of truth; and (2) plausibility analysis is a context-specific task that requires courts to use their judicial experience and common sense." Fábrica de Muebles J.J. Álvarez, Inc. v. Westernbank de Puerto Rico, 2009 WL 4730776 at *1 (D.P.R. 2009) (citations omitted).

In applying these principles, the court must disregard conclusory allegations and focus upon the well-pleaded factual allegations to determine if the Complaint plausibly gives rise to an entitlement to relief. Id.

Under Bell Atlantic v. Twombly, *supra,* a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) ("in order to 'show' an entitlement to relief a complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)'"), quoting Twombly, 550 U.S. at 555. Summarizing the standard clarified in *Iqbal* and *Twombly*, this Honorable Court explained that:

> [w]hen passing on a motion to dismiss the court must follow two principles: (1) *legal conclusions masquerading as factual allegations are not entitled to the presumption of truth*; and (2) plausibility analysis is a context-specific task that requires courts to use their judicial experience and common sense. In applying these principles, *courts may first separate out merely*

*conclusory pleadings, and then focus upon the remaining well-pleaded factual allegations to determine if*
*they plausibly give rise to an entitlement to relief.*

First Med. Health Plan, Inc. v. Caremark PCS Caribbean, Inc., 681 F. Supp. 2d 111
(D.P.R. 2010) (citing Iqbal, 556 U.S. at 678-79 and Twombly, 550 U.S. at 555-56) (Our
emphasis).

Thus, when analyzing a motion to dismiss, courts should first identify and disregard
"statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals
of the elements of a cause of action." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir.
2011) (citing Twombly, 550 U.S. at 555) (internal quotation marks omitted); Díaz-Morales v. Rubio-
Paredes, 50 F. Supp. 3d 98, 106-107, 2014 U.S. Dist. LEXIS 143432, 11-13. In doing so, the court
"need not accept as true legal conclusions from the complaint or naked assertions devoid of further
factual enhancement." Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir. 2009) (citing Iqbal, 556 U.S.
at 678). Thereafter, the court shall determine whether the complaint states a plausible claim for relief,
which requires context specific analysis that draws on the court's "judicial experience and common
sense." Iqbal, 556 U.S. at 664-664; Twombly, 550 U.S. at 555.

Even before Twombly, the First Circuit had held that the 12(b)(6) standard does not permit a
district court to "swallow the plaintiffs' inventive hook, line, and sinker; bald assertions, unsupportable
conclusions, periphrastic circumlocutions, and like need not be credited." Aulson v. Blanchard, 83
F.3d, 1, 3 (1st Cir. 1996). In this context, a "complaint 'must contain more than a rote recital of the
elements of a cause of action,' but need not include 'detailed factual allegations.'" Rodríguez-Vives v.
Puerto Rico Firefighters Corps of Puerto Rico, 743 F.3d 278, 283 (1st Cir. 2014) (quoting Rodríguez-
Reyes v. Molina-Rodríguez, 711 F.3d 49, 53 (1st Cir. 2013)). Therefore, "[n]on-conclusory factual
allegations in the complaint must then be treated as true, even if seemingly incredible." Ocasio-
Hernández, 640 F.3d at 12 (citing Iqbal, 556 U.S. at 681). However, "where the well-pleaded facts do
not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged

– but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 129 S.Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

### b. Rule 9(b) standard applicable to allegations of fraud in a 12(b)(6) context

This Court has held in the past that "on a motion to dismiss a claim grounded in fraud, the claim must comply with the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that 'a party must state with particularity the circumstances constituting fraud.'" Westernbank P.R. v. Kachkar, 2009 U.S. Dist. LEXIS 126405 (D.P.R. 2009), citing Fed.R.Civ.P. 9(b) and N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 13 (1st Cir. 2009). "This standard means that a complaint must specify the time, place, and content of an alleged false representation; conclusory allegations are insufficient." Westernbank P.R., supra, citing U.S. ex re. Gagne v City of Worchester, 565 F.3d 40, 45 (1st Cir. 2009) (Gagne) (citing U.S. ex rel. Rost v. Pfizer, Inc., 507 F.3d 720, 731 (1st Cir. 2007). "The standard applies to state law fraud claims asserted in federal court." Westernbank, supra, citing Cardinale, 567 F.3d at 13 (citing, in turn, Universal Commoc'n Sys., Inc. v. Lycos, Inc., 478 F.3d 413, 427 (1st Cir. 2007); Generadora de Electricidad Del Caribe, Inc v. Foster Wheeler Corp., 92 F.Supp.2d 8, 18 (D.P.R. 2000) (for fraud claim brought under diversity, state law governs substantive issues while federal law governs pleading procedure and requirements).

## III.    DISCUSSION

The main cause of action set forth in the Complaint and alleged basis of federal jurisdiction is the purported violation of the RICO Act, which makes it illegal "for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). However, to state a claim under § 1962(c) of RICO, a plaintiff must allege: (1) injury caused by (2) conduct, (3) of an enterprise, (4) through a pattern, (5) of racketeering activity. *See*

Giuliano v. Fulton, 399 F.3d 381, 386 (1st Cir. 2005). As discussed in detail below, Plaintiff is unable

to adequately meet the requirements of RICO and accordingly dismissal with prejudice is warranted.

   a.    **Plaintiff fails to state a RICO claim against the Defendants (4th and 5th causes of action).**

           i.    *Enterprise*

The term "enterprise" is defined in the RICO statute as including "any individual, partnership,

corporation, association, or other legal entity, and any union or group of individuals associated in fact

although not a legal entity." 18 U.S.C. § 1961(4). As explained by the United States Supreme Court,

"enterprise" reaches "a group of persons associated together for a common purpose of engaging in a

course of conduct" and "is proved by evidence of an ongoing organization, formal or informal, and

by evidence that the various associates function as a continuing unit." United States v. Turkette, 452

U.S. 576, 583 (1981). Thus, besides alleging the existence of the enterprise, *the plaintiff must also set forth*

*the relationship each individual defendant has with that enterprise. See* Friendly Hotel Boutique Corp. v. ME&A

Capital, LLC, 2012 U.S. Dist. LEXIS 131777, 2012 WL 4062795 (D.P.R. 2012) (citing University of

Md. v. Peat, Marwick, Main & Co., 996 F.2d 1534 (3rd Cir. 1993) (stating that a "nexus must exist

between the person and the conduct in the affairs of the enterprise")).

Pertaining to the enterprise supposedly constituted by Defendants, the Complaint states in

conclusory fashion that:

> 91. The association of Hugh A. Andrews, John Paulson, Fahad Ghaffar and the respective
> corporations and limited liability corporations (cumulatively, the "Conspirators"),
> constituted an enterprise within the scope of 18 U.S.C. §1961(c), which enterprise was
> engaged in, and whose activities affected, interstate and foreign commerce. This enterprise
> is continuous in that it has been established for more than 10 years and all of the
> corporations have been used to hide and mask the actions of its agents and major
> shareholders, has been an ascertainable structure, and was distinct from the predicate
> offenses alleged here.

> 92. Each Conspirator is a person within the meaning of 18 U.S.C. §1961(3) and separate
> from the enterprise.

93. Defendants Hugh A. Andrews, John Paulson and Fahad Ghaffar are in charge of all its operations. As such, they set up, have orchestrated, and supervised the entire racketeering scheme at issue.

94. Conspirators' scienter is clearly established from their pattern and practices at issue.

95. Conspirators participated, and conspired with others (including their attorneys, accountants and others whose identities are known only to Conspirators at this time) to participate, in the affairs of the aforementioned enterprise through a pattern of racketeering activity, as more fully set forth below, an (*sic*) all in violation of 18 U.S.C. § 1962(c).

96. The exact role of each of the conspirators is known only to Defendants at this time.

97. Defendant restaurants improperly collected the abated tax from hundreds of customers totaling at least $2,405.71.

43. …[A]ll these corporations have used the same representing agent, thus uncovering an elaborate scheme of alter egos used by the defendants as mean to defraud consumers and guests.

(Dkt. No. 18, ¶ 91-97, 43).

It is firmly settled that under Twombly, *supra*, a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." Here, Plaintiff fails to allege with specificity what relationship exists between Paulson, Ghaffar and Andrews; what is the role of these individuals in the "respective corporations and limited liability corporations;" when the "enterprise" was formed; what is the purpose of the alleged "enterprise;" how the corporations are related; and how these organizations function as a continuing unit. In sum, the allegations of the Complaint do not connect the defendants between themselves in any way to even suggest that they were working toward the goal of collecting the abated sales tax ("SUT", by its Spanish acronym) during the period referenced in the Complaint and retained it for their benefit.

Moreover, Plaintiff's claim is based upon a RICO enterprise (18 U.S.C. § 1961(4)), that he describes as a conspiracy "orchestrated, and supervised" between the defendants. Yet, there is no indication, apart from these empty epithets, to demonstrate or even suggest that collecting the abated tax was made by or in cooperation between all these entities and individuals; mere conclusory

allegations are, again, insufficient to survive dismissal under Rule 12(b)(6). Furthermore, the Complaint doesn't aver that another restaurant or bar, besides Solera Restaurant at La Concha Hotel, collected the abated tax, or, perhaps more importantly, that the abated tax was collected by any named defendant on another occasion besides November 4th, 2017.

Similarly, the Complaint is bereft of any factual allegations pertaining to the relationship that purportedly exists between the Defendants. As to the individual defendants, the Complaint merely states that Paulson and Ghaffar are "mayor (sic) investors" of the hotels and that Andrews has a beneficial relationship with International Hospitality Group, Inc., but there are no additional details as to the specific role of these individuals in the corporate entities' operations. Simply put, nothing in Plaintiff's allegations ties the Defendants to any common purpose and far less to a concerted decision to collect SUT during the lift period. Moreover, the Complaint lacks any factual allegations showing any actual link between these persons and the alleged "enterprise."

The absence of specific allegations as to Paulson, Ghaffar and Andrews is likely meant to gloss over the ***standard practice*** of investors and managers having ***nothing*** to do with day-to-day matters like sales tax collection. The individual defendants' mention in the Complaint is nothing more than an attempt to attract media interest, embarrass these individuals, and extract a larger settlement on frivolous claims.[9]

In this regard, it is well-settled that under RICO, the enterprise itself cannot also be the persons that plaintiffs charge with conducting an illegal enterprise. *See* <u>Bessette v. Avco Financial Services, Inc.</u>, 230 F.3d 439, 448 (1st Cir. 2000). An enterprise "must be more than a group of people who get

---

[9] While the appearing defendants posit that the instant Complaint should be dismissed with prejudice as to all appearing defendants on the grounds asserted in the instant Motion to Dismiss, it is respectfully requested in the alternative that the Complaint be dismissed as to the individual co-defendants (Paulson and Ghaffar) represented by the undersigned as it is evident from the face of the Complaint and the complete lack of factual assertions pointing to the knowledge or involvement of Paulson and Ghaffar in any of the alleged events or acts that give rise to the instant action, that Plaintiff lacks a plausible claim against the appearing individual defendants.

together to commit a 'pattern of racketeering activity,'" United States v. Neapolitan, 791 F.2d 489, 499-500 (7th Cir.), *cert. denied*, 479 U.S. 940 (1986), and more than a group of associated businesses that "are operated in concert" under the control of one family. "The hallmark of an enterprise is a 'structure.'" United States v. Korando, 29 F.3d 1114, 1117 (7th Cir.) (citing Neapolitan, 791 F.2d at 500), *cert. denied*, 130 L. Ed. 2d 406, 115 S. Ct. 496 (1994). There must be "a structure and goals separate from the predicate acts themselves." Id. (citing United States v. Masters, 924 F.2d 1362, 1367 (7th Cir.), *cert. denied*, 500 U.S. 919, 114 L. Ed. 2d 105, 111 S. Ct. 2019 (1991)). An enterprise can be formal or informal; there need not be much structure, but the enterprise must have some continuity and some differentiation of the roles within it. *See* Burdett v. Miller, 957 F.2d 1375, 1379 (7th Cir. 1992). There must also be "a common purpose of engaging in a course of conduct." Turkette, 452 U.S. at 583.

Thus, the statute requires that the "persons" (*i.e.* Andrews, Paulson, Ghaffar and the respective corporation defendants) engaged in racketeering be distinct from the "enterprise" whose activities he or she seeks to conduct through racketeering. *See* Compagnie De Reassurance D'Ile de France v. New England Reinsurance Corp., 57 F.3d 56, 92 (1st Cir. 1995) (affirming dismissal of claims where there was no evidence that the enterprise "took any actions independent of its parent [defendant]" and, thus, the enterprise and defendant could not be found to be distinct from each other); *see, e.g.*, Miranda v. Ponce Federal Bank, 948 F.2d 41, 44-45 (1st Cir.1991) ("the same entity cannot do double duty as both the RICO defendant and the RICO enterprise"). Here, Plaintiff is unable to differentiate the people and corporations from the enterprise, and, cannot even identify which entity or person constitutes the "enterprise" conducting the alleged misconduct. Moreover, Plaintiff alleges that Andrews, Paulson, Ghaffar and the respective corporations "constituted an enterprise" which creates an overlap in the identity of the "persons" and the "enterprise." This alone is fatal to Plaintiff's claim pursuant to §1962(c). *See*, Molina v. Union Independiente Auténtica De La AAA, 750 F. Supp. 2d 417, 422-423, (D.P.R. 2010).

14

After examining Plaintiff's well-pleaded facts and discarding the "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" pled in the Complaint, it is evident that Plaintiff failed to sufficiently allege that the individuals and corporations are in fact associated for a common purpose. Accordingly, the Complaint fails to comply with the specificity requirements set forth in <u>Twombly</u> and <u>Iqbal</u>, *supra*, as it pertains to the existence of a distinct enterprise.

Furthermore, Plaintiff fails to plead specific factual allegations to substantiate the RICO enterprise element. To the contrary, besides identifying defendants, nothing in the Complaint ties them to any conduct to deliberately collect SUT while the suspension was in effect. The November 4th transaction is not enough to sustain the bald assertion that Defendants entered into any agreement to engage in a "scheme […] executed […] from September 21, 2017 to January 7, 2018 to collect and retain the before mentioned sales tax on prepared food that had been lifted by the direct order emitted by the Secretary of the Department of Treasury." The same applies to the allegation that $2,405.71 worth of SUT was collected on that day from more than 100 customers. Nothing specifically implicating the individual and corporate defendants with those alleged transactions was averred and, moreover, there were many services and products not exempted from collection of the SUT. These conclusory statements do not substantiate a finding that Defendants knowingly and willfully agreed and conspired to conduct a racketeering enterprise. Since Plaintiff cannot satisfy this threshold requirement of RICO, his claim is insufficient to survive dismissal. *See* <u>Giuliano v. Fulton</u>, 399 F.3d 381, 386 (1st Cir. 2005); <u>Soto-Negron v. Taber Partners I,</u> 339 F.3d 35 (1st Cir. 2003).

     *ii.*   <u>*Pattern of racketeering activity*</u>

A successful RICO plaintiff seeking to establish a pattern must **show** at least **two** predicate acts of racketeering activity that are committed over an extended period. *See* <u>N. Bridge Assocs., Inc. v. Boldt</u>, 274 F.3d 38, 42 (1st Cir. 2001). In addition, the plaintiff must demonstrate that the "predicates

are related, and that they amount to or pose a threat of continued criminal activity." Efron v. Embassy Suites (P.R.), Inc., 223 F.3d 12, 15 (1st Cir. 2000). This "pattern" element has two prerequisites: (1) two predicate acts of racketeering, and (2) continuity of those acts.

Per the Complaint, the alleged pattern of racketeering activity engaged in by defendants "consisted of a scheme executed by defendants from September 21, 2017 to January 7, 2018 to collect and retain the sales tax on prepared food that had been lifted by the direct order emitted by the Secretary of the Department of Treasury." *See* Dkt. No. 18, ¶ 110. However, the ***only actual event*** that Plaintiff specifically pleads and sets forth in the Complaint is that "[o]n November 4, 2017, Plaintiff Wilfredo Rodríguez was illegally charged the abated tax at Defendant's resorts;" specifically at Solera Restaurant, located within La Concha Hotel. *See* Dkt. No. 18, ¶¶ 4, 6, 45. Notably, while Rodríguez alleges in entirely conclusory fashion that "[l]ike Plaintiff, members of the class were also illegally charged the abated tax at Defendants' resorts" (Dkt. No. 18, ¶ 45) and that on the same date Defendants collected $2,405.71 of SUT (Dkt. No. 18, ¶ 46), Plaintiff only describes and specifies ***one*** single act, namely, his transaction at Solera on November 4th, 2017 and was not able in his Amended Complaint to identify any other specifics acts where the suspended SUT was charged to any other customer.[10] These allegations fail to satisfy the "plausibility standard" of *Twombly*.

On the other hand, to establish continuity, "the plaintiff must show that the related predicates amounted to, or posed a threat of, continued criminal activity." Efron, 223 F.3d 12. The continuity requirement may be satisfied by one of two methods. *See* H. J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 238 (1989); *see also* Fac, Inc. v. Cooperativa de Seguros de Vida, 106 F. Supp.2d 244, 257-259 (2000). By the first method, "a party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of

---

[10] Plaintiff conveniently forgets to mention that there were many other products and services not exempted from the state SUT.

time." H.J. Inc. at 242, 109 S. Ct. at 2902. Because Congress intended RICO to apply only to enduring criminal conduct, predicate acts, under the "closed period" analysis, *must extend over a period of time longer than a few weeks or months*. *See* Id.

The second method of satisfying the continuity requirement is known as the "open-ended" approach. Even where the alleged predicate acts take place within a narrower time frame, if "the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future" or "form part of an ongoing entity's regular way of doing business," there is sufficient continuity for purposes of establishing a pattern. Id. However, "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy the requirement." Fleet Credit Corp. v. Sion, 893 F.2d 441, 447 (1st Cir. 1990). RICO is not aimed at a single narrow criminal episode, even if that single episode involves behavior that amounts to several crimes, for example, several unlawful mailings. *See* Apparel Art. Int'l., Inc. v. Jacobson, 967 F.2d 720, 723 (1st Cir. 1992).

Here, even though Plaintiff only includes specific factual allegations pertaining to a single incident on November 4th, 2017 and the whole amount of SUT collected solely on that day, the timeframe of the executive order consists of approximately three months and three weeks.[11] This time period, in and of itself, is insufficient to satisfy the closed-period continuity approach. In addition, there is no evidence or allegation suggesting that the Defendants' acts threaten continued, open-ended criminal activity, particularly since the government's decision to lift the sales tax was temporary and actually ended on January 7th, 2018. On this point, it is worthwhile mentioning that, absent the extraordinary circumstances and events in the aftermath of Hurricane María and the temporary lifting of the sales tax for prepared foods per the Governor's Executive Order and the Administrative

---

[11] Plaintiff even admits in the Complaint that the period of time in which the alleged predicate acts took place consists of "a period of four months" (Dkt. No. 18, ¶ 116). However, and again, that is merely a conclusory and speculative allegation, since Plaintiff is only capable of describing one single transaction that took place on one day and specifying the total amount of SUT charged at La Concha on just that day, even forgetting to mention that it comprises services and products not exempted from the tax.

Determinations issued by the Treasury Department, <u>collecting the sales tax and remitting said sales tax to the Treasury Department was the norm and required by law</u>. *See* P.R. Laws Ann. tit. 13, § 32021.

Moreover, the alleged predicate acts that are pled in the Complaint necessarily arise out of a single course of conduct or event. This, in and of itself, puts these purported predicate acts beyond the reach of the RICO statute. The general rule is that although two predicate acts are a necessary condition for RICO liability, they are not, in every case, sufficient: "[r]acketeering acts . . . do not constitute a pattern simply because they number two or more." <u>Roeder v. Alpha Indus., Inc.</u>, 814 F.2d 22, 30 (1st Cir. 1987). Here, only one predicate act has been specifically pled in the Complaint and as such the Complaint fails to state a claim under RICO. Regardless, taking Plaintiffs' allegations as true and assuming *arguendo* that defendants collected the abated tax from September 21st, 2017 through January 7th, 2018, the purported predicate acts necessarily would be part of a single episode. This is not "the kind of pattern that poses a 'threat of continued criminal activity.'" <u>González-Morales v. Hernández-Arencibia</u>, 221 F.3d 45, 52 (1st Cir. 2000) (quoting <u>H.J. Inc. v. Nw. Bell Tel. Co.</u>, 492 U.S. 229, 239 (1989)). Indeed, "courts 'have consistently held that a single episode does not constitute a "pattern," even if that single episode involves behavior that amounts to several crimes (for example, several unlawful mailings).'" <u>Id</u>. (quoting <u>Apparel Art Int'l, Inc. v. Jacobson</u>, 967 F.2d 720, 723 (1st Cir. 1992)).

The Complaint evidently fails to adequately allege a "pattern" of racketeering over an extended period as required by RICO. Taken as true for purposes of the instant motion to dismiss, one single event or the collection of the abated tax on just one day is not sufficient to establish a pattern under RICO. Using that limited information to merely create a suspicion that a "pattern" might have occurred is not enough. Plaintiff, thus, fails to plead specific factual allegations to substantiate RICO's "pattern" requirement. Since a threshold requirement of RICO cannot be satisfied by Plaintiff, his claim should be dismissed. *See* <u>Giuliano v. Fulton</u>, 399 F.3d 381, 386 (1st Cir. 2005); <u>Soto-Negron v.</u>

<u>Taber Partners I</u>, 339 F.3d 35 (1st Cir. 2003).

    *iii.*    <u>*Wire fraud*</u>

A cardinal requirement of civil RICO liability is the allegation of the commission, or attempt or conspiracy to commit, defined predicate acts needed to establish "a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). Acts in only one defined predicate-act category were specifically alleged by Plaintiff in the Complaint: wire fraud. *See* 18 U.S.C. § 1343. RICO complaints that plead predicate acts of wire fraud must comply with the heightened pleading standard outlined in Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"). *See* <u>Feinstein v. Resolution Tr. Corp.</u>, 942 F.2d 34, 42 (1st Cir. 1991). Accordingly, the First Circuit Court of Appeals "prune[s]" RICO complaints to the predicate offense allegations that meet Rule 9(b)'s pleading standard *before* analyzing whether the complaints meet RICO's "pattern" prong. *See* <u>Giuliano v. Fulton</u>, 399 F.3d 381, 389-90 (1st Cir. 2005).

Rule 9(b) requires that, "[i]n alleging fraud or mistake, <u>*a party must state with particularity*</u> the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To plead with specificity in RICO and satisfy Rule 9(b)'s particularity requirement, a plaintiff must "go beyond a showing of fraud and <u>*state the time, place and content of the alleged mail and wire communications perpetrating that fraud*</u>." *See* <u>Cordero-Hernández v. Hernández-Ballesteros</u>, 449 F.3d 240, 244 (1st Cir. 2006) [our emphasis]. This heightened standard serves three primary purposes: (1) to put defendants on notice, (2) to prevent against "fishing expeditions" during discovery, and (3) to <u>*safeguard defendants' reputations from frivolous fraud claims*</u>. *See* <u>New England Data Servs., Inc. v. Becher</u>, 829 F.2d 286, 289 (1st Cir. 1987).

In applying these principles, courts require RICO plaintiffs who plead wire fraud specifically to allege the <u>*locations, dates, and senders*</u> of the wire communications that perpetrated the fraud. *See* <u>Ahmed v. Rosenblatt</u>, 118 F.3d 886, 889 (1st Cir. 1997) (holding that plaintiff failed to show required predicate acts by failing to supply the times, places, and contents of wire communications in

his wire fraud RICO claim); Ferrer v. Int'l Longshoremen's Ass'n (ILA) AFL-CIO, Civ. No. 08-1505, 2009 U.S. Dist. LEXIS 39964, 2009 WL 1361953, at *5-6 (D.P.R. May 11, 2009) (Pieras, Jr., J.) (concluding that complaint stated mail fraud allegations with sufficient specificity by giving dates of when letters were received from specific defendants); Hernández v. Ballesteros, 333 F. Supp. 2d 6, 11-12 (D.P.R. 2004) (Casellas, J.) (finding that factual allegations that allege only the content of mail and wire communications do not meet Rule 9(b)'s specificity threshold).

The Complaint makes the following allegations of purported wire fraud:

98. Defendants and the other members of the enterprise, having devised or intending to devise the scheme or artifice to defraud, and/or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, for the purpose of executing such scheme or artifice or attempting so to do, *deposited checks and cash into a bank that is part of the interstate banking system*. Also, the defendants *received payments and reservations through the electronic payment method for Visa, Mastercard, ATM and others*. In all, thousands of checks were deposited and electronic transactions made, and each check deposited or transaction received by the ATM system constitutes a separate occurrences of wire fraud. Specifically,
    a. Each check that was used to pay the food or reservations.
    b. Each electronic transaction made through the ATM and credit card system.
    c. All payment received for the services of room service
[…]

104. On *dates and times, known only to the Conspirators,* Conspirators, in furtherance of the racketeering scheme, deposited checks, cash and had electronic wire transfers wired into the interstate banking system.

(Dkt No. 18, ¶¶ 98, 104) (Emphasis added).

These general and conclusory allegations are entirely devoid of any factual statements pertaining to the locations of the communications. Moreover, Plaintiff does not specify the dates in which specific communications took place or the mode in which those communications were transmitted. Plaintiff's conclusory and bald assertion that defendants "deposited checks and cash into a bank" and "received payments and reservations through the electronic payment method for Visa, Mastercard, ATM and others" on "dates and times, known only to the Conspirators" clearly does not satisfy Rule 9(b), nor Rule 12(b)(6)'s standard. These are precisely the kind of conclusory and speculative allegations that the pleading standards seek to filter out.

20

Given the lack of specificity in the Complaint, it is apparent that Plaintiff failed to sufficiently plead interstate wire fraud under Rule 9(b). As such, Plaintiff has failed to allege that Defendants committed any predicate acts under RICO.[12] Since Plaintiff has not satisfied this RICO element, his claim should be dismissed. *See* Giuliano v. Fulton, 399 F.3d 381, 386 (1st Cir. 2005); Soto-Negron v. Taber Partners I, 339 F.3d 35 (1st Cir. 2003).

In addition, since "virtually every ordinary fraud is carried out in some form by means of mail, or wire communication", the First Circuit of the Federal Court of Appeals has held that "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." Efron v. Embassy Suites (Puerto Rico), Inc., 223 F.3d 12, 20 (1st Cir. 2000). Accordingly, in RICO cases that assert only wire fraud as predicate act, repeated or multiple communications are not enough to satisfy the required "pattern" element. *See* U.S. Textiles v. Anheuser-Busch Cos., 911 F.2d 1261, 1268 (7th Cir. 1990); Shields Enters., Inc. v. First Chicago Corp., 975 F.2d 1290, 1295 (7th Cir. 1992). Consistent with this, allegations of RICO violations involving solely wire fraud in the predicate acts, a limited number of participants or alleged victims, and a discrete scheme with a narrow purpose, such as the case at bar, are generally insufficient to satisfy the "pattern" element of a plausible RICO claim. *See, e.g.*, Lefkowitz v. Bank of NY, 2003 U.S. Dist. LEXIS 19520, 2003 WL 22480049, at *8 (S.D.N.Y. Oct. 31, 2003) ("[S]chemes involving a single, narrow purpose and one or few participants directed towards a single victim do not satisfy the RICO requirement of a closed or open pattern of continuity"), *rev'd on other grounds*, 528 F.3d 102 (2nd Cir. 2007); Lopresti v. Merson, 2001 U.S. Dist.

---

[12] Furthermore, even in a scenario in which Plaintiff were to allege wire fraud independently and aside from a RICO claim, it is well-settled that no private right of action exists under the wire fraud statute. *See* 18 U.S.C. § 1343; Saro v. Brown, 11 Fed. Appx. 387, 388 (6th Cir. 2001); Morganroth & Morganroth v. DeLorean, 123 F.3d 374, 386 (6th Cir. 1997) (concluding that violations of the federal wire fraud criminal statute "do not give rise to independent, private causes of action"); Wilcox v. First Interstate Bank of Oregon, N.A., 815 F.2d 522, 533 n.1 (9th Cir. 1987). Consequently, Plaintiff's claims under 18 U.S.C. § 1343 must be dismissed with prejudice.

LEXIS 16062, 2001 WL 1132051, at *13 (S.D.N.Y. Sept. 21, 2001) (holding that an alleged scheme of less than two years' duration and six wire fraud predicate acts with a unitary purpose did not support a finding of closed-ended continuity); Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 184 (2nd Cir. 2008) (noting that conduct persisting for less than two years is insufficient to establish close-ended continuity, particularly because only a handful of persons were involved and the alleged conspiracy scheme was simple). In the instant case, the Complaint lacks reference to any specific communications and the averments just point out a single, isolated event of alleged unlawful conduct. Consequently, no RICO "pattern" can be deduced from Plaintiff's allegations of wire fraud.

     *iv.*     *RICO conspiracy*

Plaintiff also alleges that the defendants have conspired to violate RICO (Dkt. No. 18, ¶¶123-125). *See* 18 U.S.C. § 1962(d). However, Plaintiff's claim under § 1962(d) similarly fails to state a legally cognizable claim. To succeed under § 1962(d), a plaintiff must show that the defendants were parties to an unlawful agreement or that defendants knowingly agreed to further its affairs through the commission of various offenses. *See* Miranda, 948 F.2d at 47- 48; *see also* First City National Bank & Trust v. Federal Deposit Insurance Co., 730 F.Supp. 501 (E.D.N.Y. Jan.16, 1990) (dismissing claim under 1962(d) because no agreement shown between named defendants).

Plaintiff describes a conspiracy "orchestrated, and supervised" between the defendants. However, there is no indication, apart from these empty and conclusory allegations, that collecting the abated tax was made by or in cooperation between all these entities and individuals or that they jointly accorded to collect the SUT even though the Government had temporarily ordered not to through the Governor's Executive Order and subsequent Administrative Determinations issued by the Department of Treasury. Also, Plaintiff failed to allege with specificity the relationship that exists between the individual defendants or their role in the defendant corporate entities. The specifics of how these corporations are related are entirely missing from the Complaint, as well as any allegation

22

pertaining to how these organizations function. Further, nothing is alleged as to who formed the "enterprise" and when. Plaintiff was also unable to differentiate the people and corporations from the enterprise, or even identify which organism constitutes the "enterprise" conducting the alleged misconduct. Simply put, Plaintiff's allegations are mere generalities and entirely conclusory and speculative in nature.

Likewise, the Complaint is devoid of any factual allegations pertaining to the occurrence of meetings or the existence of communications of any kind between the defendants related to the collection of the SUT from customers. The Complaint even lacks a single allegation expressing the way in which the defendants operate or describing the specific role, if any, the individual defendants have in the daily operations of the defendant hotels. Thus, it is patently clear from the pleadings that the Complaint fails to allege or depict any circumstances amounting to a RICO conspiracy. Logically, the Complaint also lacks any factual assertions pointing to any participation by defendants in a broader conspiracy, which coupled with the Complaint's insufficiencies described above warrants the dismissal of Plaintiff's conspiracy count. It is well-settled that Federal pleading standards require facts and plausibility, not unsubstantiated theories.

Lastly, it has been consistently held that Plaintiff's failure to successfully plead a substantive RICO violation dooms his/her conspiracy claim. *See* Craighead v. E.F. Hutton & Co., Inc., 899 F.2d 485, 495 (6th Cir. 1990) ("Plaintiffs' conspiracy claim cannot stand in light of the dismissal of their other RICO counts."); BancOklahoma Mortg. Corp. v. Capital Title Co., Inc., 194 F.3d 1089, 1103 (10th Cir. 1999) ("A conspiracy claim under 18 U.S.C. § 1962(d) fails when the substantive claim based on § 1962(c) is without merit."); Greenpeace v. Dow Chemical Co., 808 F. Supp. 2d 262, 274 (D.D.C. 2011) ("Because [Plaintiff] fails to state a claim under §1962(c), its conspiracy claims under 18 U.S.C. §1962(d) must likewise fail."); G-I Holdings, Inc. v. Baron & Budd, 179 F. Supp. 2d 233, 267 (S.D.N.Y. 2001) ("When a plaintiff has failed to satisfy the pleading requirements for a substantive

RICO violation, any claim of a RICO conspiracy under § 1962(d) must fail." (citing Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 244-45 (2nd Cir. 1999))). Thus, in any event, the conspiracy claim should be dismissed since Plaintiff failed to satisfy the pleading requirements for a substantive RICO violation, as discussed above.

      **b.**    **Plaintiff fails to state a claim for unjust enrichment, conversion or fraud against the Defendants (1st, 2nd and 3rd causes of action).[13]**

Aside from his insufficient and flawed RICO claim, Plaintiff asks this Honorable Court to assume supplemental jurisdiction over various claims or counts of unjust enrichment, fraud and conversion. Notably, the Complaint fails to specify or mention the specific statute or source of law under which these supplemental claims arise. Regardless, as discussed below, they suffer a similar fate to Plaintiff's RICO claim as the allegations fails to state plausible claims and utterly fail to comply with the *Twombly* standard. We discuss each in turn.

      *i.*    <u>*Unjust enrichment*</u>

Plaintiff's first supplemental cause of action is based on a theory of unjust enrichment. Accordingly, he alleges that the conduct attributed to defendants resulted in their sole benefit and seeks restitution of Plaintiff's money, or the sales tax collected from his meal or lunch at Solera. However, Plaintiff's allegations pertaining to his unjust enrichment claim do not comply with the pleading standard and fall short of the requirements needed to establish a claim for unjust enrichment under Puerto Rico law. More importantly, since another statute provides a remedy to Plaintiff, his unjust enrichment claim should be dismissed <u>with prejudice</u>. *See* <u>El Toro Elec. Corp. v. Zayas</u>, 6 P.R. Offic. Trans. 133, 138, 106 P.R. Dec. 98 (1977) (holding that unjust enrichment claims cannot be sustained where the plaintiff has another avenue of redress). *See also* <u>Marrero-Rolón v. Autoridad de</u>

---

[13] The RICO Act specifically enumerates what kinds of illegal acts count as "racketeering." *See* 18 U.S.C. § 1961(1). However, the statutory definition of racketeering activity clearly ***does not*** include unjust enrichment, conversion or common-law fraud. *Id.* This is another reason that justify the dismissal of the instant action <u>with prejudice</u>. *See* <u>Efron v. Embassy Suites (P.R.), Inc.</u>, 223 F.3d 12, 17 (1st Cir. 2000); <u>Miranda v. Ponce Fed. Bank</u>, 948 F.2d 41, 44 (1st Cir. 1991).

Energía Eléctrica de P.R., 2015 U.S. Dist. LEXIS 134211, *69.

It is well-settled that to prove a claim for unjust enrichment under Puerto Rico law, the following requirements must be sufficiently pled: (1) existence of enrichment; (2) a correlative loss; (3) nexus between loss and enrichment; (4) lack of cause for enrichment; and (5) absence of a legal precept excluding application of enrichment without cause. *See* Puerto Rico Tel. Co. v. SprintCom, Inc., 662 F.3d 74, 97 (1st Cir. 2011) (citing Hatton v. Municipality of Ponce, 134 P.R. Dec. 1001 (1994)). Since claims for unjust enrichment are "subsidiary in nature," they are available only "in situations where there is no available action to seek relief." Medina & Medina v. Country Pride Foods Ltd., 631 F. Supp. 293, 302 (D.P.R. 1986) affirmed 901 F.2d 181 (1st Cir. 1990).

First, Plaintiff alleges in conclusory and speculative manner that Defendants were unduly enriched from the purported collection of the abated sales tax, thus necessarily assuming and concluding that defendants retained the sales tax for their personal gain and did not remit said sales tax to the Treasury Department. Second, the Complaint is devoid of any allegations related to a correlative loss sustained by Plaintiff. Third, Plaintiff similarly failed to plead that there is a causal link between the loss and the alleged enrichment, which renders his allegations insufficient to state a claim.

In any event, unjust enrichment claims are subsidiary or equitable in nature and as such are not applicable when a plaintiff has another avenue of redress. Defendants' alleged wrongful conduct arguably would allow for a claim pursuant to Puerto Rico's Civil Code provisions pertaining to "Quasi Contracts." *See* P.R. Laws Ann. tit. 31, §§5091-5127, which are included within Part XVI of the Civil Code, titled "Obligations Contracted Without Agreement." *See* P.R. Laws Ann. tit. 31, §§5091-5150. Specifically, article 1796 of the Civil Code, P.R. Laws Ann. tit. 31, §5122, provides that "[a] person who accepts a payment not due, should he have acted in bad faith, must pay the legal interest when money is involved" and also would "be liable […] for the damages caused to the person who delivered it, until he recovers it." Additionally, pursuant to article 6(d) of the Puerto Rico Department of

25

Consumer Affairs Organic Act, P.R. Laws. Ann. tit. 3, §341e(d), the Secretary of Consumer Affairs runs a simple, inexpensive and agile administrative procedure in which small claims can be elucidated and the rights of consumers vindicated. *See* Ferrer Rodríguez v. Figueroa, 109 D.P.R. 398, 399-400 (1980); Pérez Ríos v. Hull Dobbs, 107 D.P.R. 834, 840-841 (1978). Consumer claims pursuant to article 1796 of the Civil Code, *supra*, can be adjudged and proper remedies granted through this administrative procedure without even recurring to the judicial system. Clearly, these provisions establish "another avenue of redress" to Plaintiff, thus rendering the subsidiary or equitable unjust enrichment claim inapplicable. *See* El Toro Elec. Corp. v. Zayas, *supra*; Marrero-Rolón v. Autoridad de Energía Eléctrica de P.R., *supra*.

### ii. *Conversion*

In his second cause of action Plaintiff alleges, again in entire conclusory and speculative fashion, that Defendants engaged in conversion, improperly obtaining rom him money that he asks be restituted. While defendant hotels may have inadvertently collected the sales tax during a single day (November 4th, 2017), a close look at the allegations in the Complaint reveals that these are wholly insufficient and fail to nudge the purported conversion claim from conceivable to plausible. Under *Twombly* and *Iqbal*, Plaintiff has failed to show a plausible entitlement to relief and accordingly his purported conversion claim should be dismissed with prejudice.

Conversion in Puerto Rico is an intentional tort,[14] a form of the fault described in Article 1802. *See* Barreto Peat, Inc. v. Luis A. Ayala Colón Sucrs., Inc., 709 F.Supp. 321, 323 (D.P.R. 1989) (citing Fed. Ins. Co. v. Banco Popular de P.R., 750 F.2d 1095, 1100 (1st Cir. 1983), aff'd 896 F.2d 656 (1st Cir. 1990). The existence of liability under article 1802 requires (1) an act or omission caused through fault or negligence, (2) a damage suffered, and (3) a causal nexus between the damage and the other party's

---

[14] The First Circuit has recognized that a conversion claim requires "an *intentional or wrongful exercise of dominion or control* over personal property of another by one with no right to immediate possession." Kelley v. LaForce, 288 F.3d 1, 11 (1st Cir. 2002) (Our emphasis).

wrongful or negligent act. P.R. Laws Ann. tit. 31, §5141. *See* Montalbán v. Centro Com. Plaza Carolina, 132 D.P.R. 785, 795-6 (1993); Elba A.B.M v. Univ. of P.R., 125 D.P.R. 294, 308 (1990).

Particularly, the act of conversion consists of "not the simple acquisition of another's property, but *the malicious and wrongful privation of the ownership rights, the illegal exercise, or the assumption of authority over another's property*, thereby depriving the lawful owner or possessor, permanently or for an indefinite period, of its use and enjoyment." Fed. Ins. Co. v. Banco de Ponce, 582 F.Supp. 1388, 1393 (D.P.R. 1984) (citing Hull Dobbs Co. v. Superior Court, 81 P.R.R. 214, 222 (1959), aff'd 751 F.2d 38 (1st Cir. 1984) (Our emphasis).

The Complaint utterly fails to set forth any concrete and specific allegations of a malicious or wrongful intent by Defendants to deprive Plaintiff of his property (the collected SUT from his meal or lunch at Solera) or to otherwise intentionally deprive Plaintiff of any such property. In any event, and in the best scenario for Plaintiff, the Complaint asserts that he was charged the sales tax (SUT) at one of Defendants' restaurants at La Concha Resort on November 4th, 2017, at a time when the majority in Puerto Rico were without power or communication. With regards to this collection, Plaintiff concludes that defendants retained his sales tax and did not remit said sales tax to the Treasury Department.[15] On this front, the Court must bear in mind that the collection of the SUT and subsequent remittance to the Treasury Department, while temporarily halted by the local authorities in the aftermath of Hurricane María, was and is the legal obligation in Puerto Rico. *See* P.R. Laws Ann. tit. 13, §32021.

Thus, when the Court properly ignores the legal conclusions and speculative averments in the Complaint pertaining to the alleged conversion claim, it should be evident that the instant Complaint

---

[15] Defendants dispute this conclusory and unsupported allegation but deem it unnecessary at this juncture to introduce extrinsic evidence to show that any and all sales tax inadvertently collected on November 4th, 2017, was duly remitted to the Treasury Department, as has always been the practice of defendant hotels. However, should the Honorable Court deem it necessary that the appearing defendants submit this evidence in order to properly consider and adjudicate the instant Motion to Dismiss, defendants are ready and willing to do so.

is devoid of facts amounting to malice or wrongful intent by Defendants to deprive Plaintiff of abated tax paid by him ($7.20) on November 4th, 2017 at Solera. Accordingly, Plaintiff's Second Cause of Action for Conversion should be dismissed <u>with prejudice</u>.

<em>iii.</em>       <u><em>Fraud</em></u>

In his Third Cause of Action, Plaintiff states that "Defendants have improperly obtained money from Plaintiff" and concludes that this "conduct of Defendants constitutes fraud, suppression and/or reliance" (Dkt. No. 1, ¶¶86-88). As discussed above, not only do Plaintiff's fraud allegations fail as a RICO predicate,[16] but it is also evident that the Complaint fails to meet the heightened standard required to plead fraud. As such, Plaintiff's supplemental claim for fraud should similarly be dismissed <u>with prejudice</u>.

Plaintiff's purported supplemental fraud claim appears to merely restate and rehash the allegations pertaining to his unjust enrichment and conversion claims, while alleging in conclusory fashion that the Defendants are liable for fraud on the singular basis that they improperly obtained money from Plaintiff. Conclusory and speculative allegations aside, the Complaint fails to set forth the specific fraudulent actions allegedly undertaken by Defendants with any degree of particularity, as required by Rule 9(b) of the Federal Rules of Civil Procedure, which governs and sets forth the pleading standard for fraud claims.

Rule 9(b) of the Federal Rules of Civil Procedure creates a higher pleading standard for fraud or mistake claims than what is otherwise required by Rule 8(a)(2). "Rule 9(b) requires that <u><em>[i]n alleging</em></u>

---

[16] "RICO does not confer on private plaintiffs a right to sue defendants who engage in any act of common-law fraud". <u>Anza v. Ideal Steel Supply Corp.</u>, 547 U.S. 451, 477 (2006). Moreover, "[a] threat of continued criminal activity for purposes of RICO is not established merely by demonstrating that [Defendants'] acts of common law fraud was a regular way of conducting their ongoing business." <u>Fleet Credit Corp. v. Sion</u>, 893 F.2d, at 448. Rather, Plaintiff should allege that actions enumerated in the RICO statute as predicate acts were Defendants' regular way of conducting business. <em>See</em> 18 U.S.C. § 1961 (1); <u>Fleet Credit Corp. v. Sion</u>, 893 F.2d, at 448. However, as already shown, Plaintiff has not even been able to sufficiently plead interstate wire fraud under Rule 9(b). As such, Plaintiff has failed to allege that Defendants committed <strong><em>any</em></strong> predicate acts under RICO.

28

*fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.* This standard means that a complaint must specify the time, place, and content of an alleged false representation. . . . <u>Conclusory allegations . . . are not sufficient to satisfy Rule 9(b)</u>." <u>U.S. ex rel. Gagne v. City of Worcester</u>, 565 F.3d 40, 45 (1st Cir. 2009) (internal quotation marks omitted). (Emphasis added).; see Fed.R.Civ.P. 9(b). A complaint is sufficient if it can "*afford a basis for believing that plaintiffs could prove scienter*[17]." <u>Greenstone v. Cambex Corp.</u>, 975 F.2d 22, 25 (1st Cir. 1992). (Our emphasis). Under this heightened pleading standard for fraud, the claimant <u>must</u> specify the false statements and by whom they were made. <u>Id.</u> (citing <u>North American Catholic Educational Programming Foundation, Inc. v. Cardinale</u>, 567 F.3d 8, 13 (1st Cir. 2009). In other words, *the pleader must "specify the who, what, where, and when of the allegedly false or fraudulent misrepresentation*." <u>Id.</u> (citing <u>Alternative Sys. Concepts, Inc. v. Synopsys, Inc.</u>, 374 F.3d 23, 29 (1st Cir. 2004)). (Emphasis added).

The importance of the heightened pleading should not be underestimated. It "serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." <u>Brooks v. Blue Cross and Blue Shield of Fla., Inc.</u>, 116 F.3d 1364, 1370-71 (11th Cir. 1997); *see also* <u>U.S. ex rel. Gagne v. City of Worcester</u>, 565 F.3d 40, 45 (1st Cir. 2009); <u>Hayduk v. Lanna</u>, 775 F.2d 441, 444 (1st Cir. 1985) ("*mere allegations of fraud … or referrals to plans and schemes are too conclusional* to satisfy the particularity requirement"). (Emphasis added).

Under Puerto Rico law, the party alleging fraud has the burden of demonstrating: (1) a false representation by the defendant; (2) the plaintiff's reasonable and foreseeable reliance thereon; (3) injury to the plaintiff as a result of the reliance; and (4) an intent to defraud." <u>Westernbank P.R. v. Kachkar</u>, 2009 U.S. Dist. LEXIS 126405 (D.P.R. 2009), citing 31 L.P.R.A. §3408; <u>P.R. Elec. Power</u>

---

[17] Scienter is a mental state embracing intent to deceive, manipulate or defraud. *See* <u>Ernst & Ernst v. Hochfelder</u>, 425 U.S. 185, 193 n. 12, 96 S.Ct. 1375, 45 L.Ed.2d 668 (1976); <u>TeleRep Cribe, Inc. v. Zambrano</u>, 266 F.Supp.2d 284, 286 (n. 2) (D.P.R. 2003).

Auth. v. Action Refund, 515 F.3d 57, 66 (1ˢᵗ Cir. 2008) (summary judgment standard) (citing Microsoft Corp. v. Computer Warehouse, 83 F.Supp.2d 256, 262 (D.P.R. 2000) (motion to dismiss standard)).

Here, Plaintiff categorically fails to identify a single false statement of material fact, and likewise fails to "specify the who, what, where, and when of the allegedly false or fraudulent misrepresentation." In paragraph 81 of the Amended Complaint, Plaintiff conclusorily avers that "[e]ach defendant acted with full knowledge that the collection of this tax had been lifted as established by the direct orders from the Governor of Puerto Rico and the Secretary of the Department of Treasury" (Dkt. No. 18, ¶81). Plaintiff also alleges in conclusory fashion that Defendants concealed to their customers the fact that the Department of the Treasury had lifted the collection of the sales tax (SUT) after the passing of hurricane María. (Dkt. No. 18, ¶82). However, Plaintiff failed to specify if any of the Defendants made false representations to him, i.e. that the lift of the SUT collection was discontinued. Even more, Plaintiff's claim lacks any reference whatsoever as to how he relied on any representation by any Defendant to voluntarily pay, on November 4ᵗʰ, 2017, the abated sales tax.[18] Obviously, it follows that the Complaint is also devoid of any allegations as to the causal nexus elements required to establish a claim for fraud under Puerto Rico law.

Lastly, the Complaint is utterly devoid of any specific or concrete factual assertions about the intent factor needed to substantiate a fraud claim. Plaintiff only alleges in conclusory fashion that Defendants knew that the collection of the sales tax was lifted by orders from the Governor, while neglecting to provide any specifics about Defendants' purported knowledge of the sales tax collection. Likewise, Plaintiff failed to provide any specific factual assertions as to the Defendants' involvement in any decision to collect the suspended tax. Since "a general averment that defendants 'knew' earlier what later turned out badly" is insufficient to comply with the heightened pleading standard applicable

---

[18] This also applies to the allegations that other customers were allegedly charged the suspended SUT on the same day as Plaintiff. The Complaint even fails to mention whether the SUT collected on that day included transactions not exempted from its collection.

to this case, it is evident that Plaintiff's supplemental fraud claim is insufficient and should be dismissed with prejudice. *See* Greenstone v. Cambex Corp., 975 F.2d 22, 25 (1st Cir. 1992).

> **c.    In the alternative, the Court should decline to exercise supplemental jurisdiction over Plaintiff's supplemental claims**

Title 28, United States Code, Section 1367 provides "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367 (2000). The scope of 28 U.S.C. §1367 regarding state law claims is illustrated by case law dealing with pendent jurisdiction. *See e.g.*, Orria-Medina 565 F. Supp. 2d at 322-23. "Pendent jurisdiction exists whenever there is a claim arising under the Constitution, the Laws of the United States, and treaties made under their authority and the relationship between that claim and the state claim can be found to constitute, but one constitutional case." Id. at 322. The federal and state claims must "derive from a common nucleus of operative fact." United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966); Confederación Laborista De Puerto Rico v. Cervecería India, Inc., 607 F.Supp. 1077, 1081 (D.P.R. 1985).

In *Gibbs*, 383 U.S. at 726, the Supreme Court ruled that a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates a case properly belongs in state court, *as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain*, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice. *See* Martínez v. Colón, 54 F.3d 980, 990-91 (1st Cir. 1995).

The dismissal of Plaintiff's federal claims under RICO and the wire fraud statue undermines the basis for the exercise of supplemental jurisdiction. As such, and while there are sufficient grounds

to dismiss the supplemental claims on their merits, this Honorable Court may decline to exercise supplemental jurisdiction over Plaintiff's supplemental claims.

**WHEREFORE**, the appearing co-defendants respectfully request that this Honorable Court grant the instant Motion to Dismiss and accordingly dismiss <u>with prejudice</u> all claims included in the Complaint.

**RESPECTFULLY SUBMITTED**, in San Juan, Puerto Rico, this 10th day of September 2018.

**WE HEREBY CERTIFY** that we have personally filed the foregoing motion with the Clerk of the Court, whom will electronically file the same using the CM/ECF System, which will send notification of such filing to all parties of record.

*Counsel for Co-Defendants Paulson, Ghaffar and Condado Duo La Concha Hotel Tower*



WWW.CSTLAWPR.COM
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434
Fax: (787) 523-3433
jcasillas@cstlawpr.com
lllach@cstlawpr.com
lramos@cstlawpr.com

*s/JUAN J. CASILLAS-AYALA*
**JUAN J. CASILLAS-AYALA**
USDC-PR No. 218312

*s/LUIS F. LLACH-ZÚÑIGA*
**LUIS F. LLACH-ZÚÑIGA**
USDC-PR No. 223112

*s/LUIS R. RAMOS-CARTAGENA*
**LUIS R. RAMOS-CARTAGENA**
USDC-PR No. 220310