**IN THE UNITED STATEES OF AMERICA
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **WILFREDO RODRIGUEZ, ET. AL.;** Plaintiffs<br><br>v.<br><br>**JOHN PAULSON, ET. AL.;** Defendants | **Civil No.** 18-1257 (DRD) |

**OPINION AND ORDER**

On August 27, 2018, Plaintiff Wilfredo Rodriguez [hereinafter, "Plaintiff"] filed his amended Class Action Complaint, pursuant to 28 U.S.C. § 1711, against various Defendants, including John Paulson, Fahad Ghaffar, and Condado Duo La Concha Hotel Tower [hereinafter, "Defendants"]. *See* Docket No. 18. Specifically, Plaintiff brought forth two federal RICO claims under 18 U.S.C. § 1962(c) & (d), respectively, as well as various state law claims, including unjust enrichment, conversion, and fraud. In synthesis, Plaintiff alleges that Defendants conspired to collect, and indeed collected, the sales tax during an almost four-month period, in violation of an executive order [hereinafter, "the Executive Order"] emitted by the then governor of Puerto Rico, Ricardo Rosello, upon the passing of Hurricanes Irma and María. *Id* at 9-11.

On September 10, 2018, in response to this Complaint, Defendants presented a *Motion to Dismiss* pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Docket No. 21. Defendants aver that they have not violate the Executive Order issued by Ricardo Rosello, and that Plaintiff has not proven all of the elements necessary for a successful RICO claim because the only incident of alleged fraud that Plaintiff mentions in his complaint occurred on November 4, 2017 and only to the Plaintiff. *Id*. They also claim that Plaintiff have not met the pleading standards of neither Federal Rule of Civil Procedure 12(b)(6) nor 9(b) and that, therefore, the Complaint fails

to allege sufficient facts to support a claim for the required relief. *Id.* For the reasons set forth below, the Court **GRANTS** Defendants' *Motion to Dismiss* at Docket No. 21.

## I.   FACTUAL AND PROCEDURAL HISTORY

Taking the allegations set forth in the Complaint as true, the facts are as follows:[1]

In 2017, Hurricanes Irma and Maria made land fall in Puerto Rico. *See* Docket No. 18 at 9. Due to the destructive nature of these events, the Governor of Puerto Rico "declared a state of emergency" in the Island. *See Id* at ¶ 36. As part of the state of emergency, the Governor of Puerto Rico enacted the Executive Order in which, among other matters, the government prohibited restaurants and fast food restaurants to charge the "general 11.5% sales tax" [hereinafter, "sales tax"] indefinitely. *See Id* at ¶ 37. Said Executive Order was applicable for a period of almost four months (specifically, from September 21, 2018 until January 7, 2018). *See Id.* On November 4, 2017, Plaintiff was allegedly illegally charged the sales tax that had been waived by the Executive Order.[2] *See Id* at ¶ 45. Plaintiff also allege that Defendants charged said sales tax with no "intention of remitting to the Treasury Department." *See Id* at ¶ 44. Furthermore, Plaintiff contends that the total sum of the illegal sales tax charged to over 100 customers by Defendants on November 4, 2017, amounted to approximately $2,405.71. *See Id* at ¶ 46.

On January 5, 2018, counsel for Plaintiff sent Defendant John Paulson a letter over this matter and attached a draft of the Complaint. *See Id* at ¶ 48. Since no response was received from Defendant John Paulson, Plaintiff filed the instant Complaint on May 2, 2018. *See Id.*

---

[1] The Court notes that Defendants sustain in their *Motion to Dismiss* that the only allegations they consider are well-pled are those contained in paragraphs 35-37, 45, 48, and 115 of the Complaint. *See* Docket No. 18 at 9-11, 22; Docket No. 21 at 5-6.
[2] Even so, Defendants reject the contention the sales tax that was charged was illegal or ill-intended. *See* Docket No. 21 at n. 5.

Plaintiff further speculates that if the illegal tax collection had "been a single isolated incident, . . . Defendant would have explained as much to Plaintiff." *See Id*.

On September 10, 2018, Defendants filed their position as to the claims via a *Motion to Dismiss* the Complaint. *See* Docket No. 21. Defendants further aver that Plaintiff has pled facts that are conclusory in nature and that do not meet the pleading standard of Rule 12(b)(6) of the Rules of Federal Civil Procedure. *See Id* at 6-7. John Paulson, et. al. also allege that Plaintiff has not met the more rigorous standard of proof required when alleging claims of fraud, pursuant to Federal Rule of Civil Procedure 9(b). *See Id* at 10. Moreover, particularly as to the RICO claims alleged by Plaintiff, Defendants argue that Plaintiff has not successfully established the existence of an enterprise or a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(4) & (5), respectively. *See Id* at 11, 15.

On November 2, 2018, Plaintiff filed an *Opposition to Defendants' Motion to Dismiss*. *See* Docket No. 33. Therein, Plaintiff makes no mention of the RICO claims, and limits himself to alleging the validity of his state-law claims. *See Id* at 5-12. Subsequently, on November 9, 2018, Defendants filed their *Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss*, which essentially restates the arguments set forth in their *Motion to Dismiss*. *See* Docket No. 36.

## II.   STANDARD OF REVIEW

### A. RULE 12(B)(6) OF FEDERAL RULES OF CIVIL PROCEDURE

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." *See Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) ("in order to 'show' an entitlement of relief above the speculative

level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).')(quoting *Twombly*, 550 U.S. at 555) (citation omitted). Thus, a plaintiff must, and is now required to, present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). *Id.* at 570; *see e.g. Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by *Twombly*, 550 U.S. 544, and *Iqbal*, 556 U.S. 662. "Context based" means that a plaintiff must allege sufficient facts that comply with the basic elements of the cause of action. See *Iqbal*, 556 U.S. at 677-679 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a *Bivens* claim, leaving the complaint with only conclusory statements). First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. *Iqbal*, 556 U.S. at 678. "Yet we need not accept as true legal conclusions from the complaint or 'naked assertion[s]' devoid of 'further factual enhancement.'" *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009) (quoting *Iqbal*, 556 U.S. 678) (quoting *Twombly*, 550 U.S. at 557).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." *Iqbal*, 556 U.S. 679. This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. *Id.*

Thus "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 41 (1st Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged —but has not 'show[n]' 'that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." *Id.* at 679-80 (citing *Twombly* 550 U.S. at 567). "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." *Ocasio-Hernandez*, 640 F.3d at 12, (citing *Iqbal*, 556 U.S. at 679); *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 45 (1st Cir. 2009).

The First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" even if seemingly incredible. *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 30 (1st Cir. 2010) (citing *Twombly*, 550 U.S. at 556); *Ocasio-Hernandez*, 640 F.3d at 12 (citing *Twombly*, 550 U.S. at 556) ("[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'"). Instead, the First Circuit has emphasized that "[t]he make-or-break standard . . . is that the combined allegations, taken a true, must state a plausible, [but] not a merely conceivable, case for relief." *Sepúlveda-Villarini*, 628 F.3d at 29. Additionally, a district court may not weigh evidence in deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Massachusetts Delivery Ass'n v. Coakly*, 671 F.3d 33, 39 n. 6 (2012) (emphasizing that a primary difference between a motion to dismiss under Rule 12(b)(1) and Rule 12(b)(6) is that, under Rule 12(b)(1), a court may weigh the evidence and make factual determinations).

However, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996). Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well. *Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592 (1st Cir. 2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." *Id.* at 596; *see Iqbal*, 556 U.S. at 681 ("To be clear, we do not reject [] bald allegations on the ground that they are unrealistic or nonsensical. . . .. it is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *see Mendez Internet Mgmt. Servs. V. Banco Santander de P.R.*, 621 F.3d 10, 14 (1st Cir. 2010) (The *Twombly* and *Iqbal* standards require District Courts to "screen[] out rhetoric masquerading as litigation.").

The First Circuit outlined two considerations for district courts to note when analyzing a motion to dismiss. *García-Catalán v. United States*, 734 F.3d 100, 104 (1st Cir. 2013). First, a complaint modeled on Form 11 of the Appendix of the Federal Rules of Civil Procedure which contains sufficient facts to make the claim plausible is ordinarily enough to surpass the standard prescribed under *Twombly-Iqbal. Id.* at 104. Second, district courts should accord "some latitude in cases where "[a] material part of the information needed is likely to be within the defendant's control." *Id.* (more latitude is appropriate in cases where "it cannot reasonably be expected that the [plaintiff], without the benefit of discovery, would have any information about" the event that gave rise to the alleged injury.) (Internal citations and quotations omitted).

**B. RULE 9(B) OF FEDERAL RULE OF CIVIL PROCEDURE**

When "claims of fraud" are presented before the Court, they are "subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." *United States ex. rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 226 (1st Cir 2004). Federal Rule of Civil Procedure 9(b) provides, in pertinent part, that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "This includes 'specifics about the time, place, and content of the alleged false representations.'" *Holland v. Select Portfolio Servicing, Inc.*, 299 F.Supp.3d 271, 275 (D. Mass. 2018) (quoting *Juarez v. Select Portfolio Serv., Inc.*, 708 F3d. 269, 279-80 (1st Cir. 2013). The First Circuit has held that the parts of the claim that must be alleged "'with particularity under Rule 9(b) generally consist of the who, what, where, and when of the allegedly [misleading] representation.'" *Kaufman v. CVS Caremark Corporation*, 836 F.3d 88, 91 (1st Cir. 2016) (quoting *Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004)) (citation omitted). *See also Dumont v. Reily Foods Co.*, 934 F.3d 35, 38 (1st Cir 2019). "Conclusory allegations and references to 'plans and schemes' are not sufficient."" *United States ex. rel. Kelly v. Novartis Pharm. Corp.*, 827 F.3d 5, 13 (1st Cir. 2016) (quoting *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194 (1st Cir. 1996)) (citations omitted).

According to the First Circuit, "[t]he core purposes of Rule 9(b) are 'to place the defendants on notice and to enable them to prepare meaningful responses,' 'to preclude the use of a groundless fraud claim as pretext for discovering a wrong,' and 'to safeguard defendants from frivolous charges [that] might damage their reputation.'" *Dumont*, 934 F.3d at 39.[3] It is true

---

[3] *See also Gonzalez-Camacho v. Banco Popular de Puerto Rico*, 318 F.Supp.3d 461, 474 (DPR 2018) ("'The First Circuit has further reinforced that Rule 9(b) has the principle 'purposes of [providing] notice to defendants of the

that the First Circuit has "appl[ied] a 'more flexible' standard such that a relator can satisfy Rule 9(b) by providing 'factual or statistical evidence to strengthen the inference of fraud beyond possibility without necessarily providing details as to each [submitted] false claim.'" (quoting *Duxbury v. Ortho Biotech Products, L.P.*, 579 F.3d 13, 29-30 (1st Cir. 2009)). However, it has also consistently "'held inadequate a complaint's general averment of the defendant's knowledge of material falsity, unless the complaint also sets forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading.'" *Holland*, 299 F.Supp.3d at 275 (quoting *N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 13 (1st Cir. 2009)) (quotations and citations omitted). Moreover, "'it is the fraud itself which must be pled with particularity, not just who benefits from the fraud and what pot of [] money may be object of the fraud.'" *Novartis Pharm. Corp.*, 827 F.3d at 13 (quoting *Gayne v. City of Worcester*, 565 F.3d 40, 47 (1st Cir.2009).[4] "It is not enough simply to rais[e] facts that suggest fraud was possible. . .." *Id.* (citations omitted). "Merely alleging that a scheme was wide-ranging —and, therefore, that a fraudulent claim was presumably submitted— with not suffice." *Id.*

It is critical to remember that "'[i]t is a serious matter to accuse a person or company of committing fraud' and the rule 'discourages plaintiffs from filing allegations of fraud merely in the hopes of conducting embarrassing discovery and forcing settlement.'" *Lawton ex. rel. v. Takeda Pharm. Co., Ltd.*, 842 F.3d 125 (1st Cir 2016) (quoting *United States ex. rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 733 (1st Cir 2007)). "The mere accusation often causes harm." *Rost*, 507 F.3d at

---

plaintiffs' claim, [protecting] defendants whose reputation may be harmed by meritless claims of fraud, [discouraging] 'strike suits', and [preventing] the filing of suits that simply hope to uncover relevant information during discovery.'") (quoting *United States ex. rel. Nargol v. DePuy Orthopedics, Inc.*, 865 F.3d 29, 38 (1st Cir. 2018) (internal quotations omitted).

[4] *See Gonzalez-Camacho*, 318 F.Supp.3d at 474 ("'Even where allegations are based on information and belief, supporting facts on which the belief is founded must be set forth in the complaint.'") (quoting *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 193 (1st Cir 1999) (internal quotations omitted),

733 (citations omitted). "Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard. It does not give him license to evade the less rigid—though still operative—strictures of Rule 8." *Iqbal*, 556 U.S. at 686-87. For this reason, "Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label 'general allegation', and expect his complaint to survive a motion to dismiss." *Id* at 687.

### III.   ANALYSIS

#### A.   Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1962(c)

Plaintiff in this case states a claim under 18 U.S.C. § 1962(c) [hereinafter, "§ 1962(c)"], alleging that Defendants incurred in illegal tax collection during the time when such tax collection was prohibited, pursuant to the Executive Order issued by the Governor, upon the passing of Hurricanes Irma and María. (*See* Docket No. 18, at 9). This statute states the following:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).

Due to the vague and overbroad nature of the statute, and in order to properly determine if Defendants indeed violated said statute, it is necessary to discuss its requirements. The First Circuit, following Supreme Court precedent, has held that "to state a claim under section 1962(c), a plaintiff must allege each of the four elements required by the statute: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Feinstein v. Resolution Trust Corp.*, 942 F.3d 34, 41 (1st Cir. 1991) (citing *Sedim, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). *See also Fábrica de Muebles J.J. Alvarez, Inc. v. Westernbank de Puerto Rico*, No. 09-1558, 2009 WL 4730776, at *4 (DPR Dec. 4, 2009).; *Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 14-15 (1st Cir. 2000). Since Defendants' claims center around the failure to establish

the existence of a RICO enterprise or a pattern of racketeering activity, the Court proceeds to analyze each element.

### i. The RICO Enterprise Element

"Enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). In the same respect, "an association-in-fact enterprise" is considered "a group of persons associated together for a common purpose of engaging in a course of conduct." *Boyle v. United States*, 556 U.S. 938, 946 (2009) (citing *United States v. Turkette*, 452 U.S. 576, 583 (1981)). Regarding the meaning of the term "conduct", as applied in relation to the term "enterprise", the Supreme Court held that:

> In order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs. Of course, the word 'participate' makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase 'directly or indirectly' makes clear that RICO liability is not limited to those with a formal position in the enterprise, but *some* part in directing the enterprise's affairs is required.

*Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). It has further held that, "one is not liable under [§ 1962(c)] unless one has participated in the operation or management of the enterprise itself." *Id* at 183. However, the First Circuit has consistently held that the defendant and the enterprise in a RICO claim must be different entities. *See Westernbank de Puerto Rico*, 2009 WL 4730776, at *6 ("Under the law, the persons alleged to be engaged in racketeering activity must be a distinct entity, 'employed by or associated with' the enterprise.") (citations omitted); *Miranda v. Ponce Federal Bank*, 948 F.2d 41, 44-45 (1st Cir. 1991) ("[T]he same entity cannot do double duty as both the RICO defendant and the RICO enterprise. . . . The enterprise, even

if itself blameworthy, cannot also be answerable as a defendant under section 1962(c).") (citation omitted).

In the present case, Plaintiff has failed to allege how Defendants are distinct from the RICO enterprise. *Miranda*, 948 F.2d at 44. Plaintiff's only contention that Defendants are separate from the RICO enterprise is the following sentence: "[e]ach Conspirator is a person within the meaning of 18 U.S.C. § 1961(3) and separate from the enterprise." (Docket No. 18, at 19). Notwithstanding, both prior and subsequent to this allegation, the Plaintiff referred to the Defendants as forming part of the alleged RICO enterprise. (See Docket No. 18, at 18-19).[5] This is exactly the type of "double duty" that the First Circuit has held inappropriate. *Miranda*, 948 F.2d at 44. Therefore, this Court is of the opinion that "because the racketeer and the enterprise must be distinct, [the Plaintiff]'s claim against [Defendants] cannot succeed." *Id* at 45.

## ii. The RICO Pattern

This Court proceeds to discuss the "pattern of racketeering activity" element at issue in this case. "Pattern of racketeering activity" is explained as "requir[ing] *at least two acts of racketeering activity*, one of which occurred after the effective date of this chapter [in other words, after October 15, 1970] and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5)

---

[5] The Court refers to the following portions of the Complaint:
> 91. The association of Hugh A. Andrews, John Paulson, Fahad Ghaffar, and the respective corporation and limited liability companies (cumulatively, the "Conspirators"), constituted an enterprise within the scope of 18 U.S.C. § 1961(c). . . .
>
> . . . .
>
> 93. Defendants. . . are in charge of all its operations. As such, they set up, have orchestrated, and supervised the entire racketeering scheme at issue.
>
> . . . .
>
> 98. Defendants and the other members of the enterprise, having devised or intending to devise the scheme or artifice to defraud . . . .

(emphasis added). *See also Feinstein*, 942 F.2d at 42; *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 237 (1989). The statute "'does not so much define a pattern of racketeering activity as state a minimum necessary condition for the existence of such a pattern.'" *Feinstein*, 942 F.2d at 42 (citing *H.J., Inc.*, 492 U.S. at 237).

Notwithstanding, the First Circuit understands that proving that a pattern exists is not, in and of itself, enough; "the plaintiff must also demonstrate that the 'predicates are related, *and* that they amount to or pose a threat of continued criminal activity.'" *Efron*, 223 F.3d at 15 (citing *H.J., Inc.*, 492 U.S. 239). "'It is the factor of *continuity* [of the predicate acts] *plus relationship* which combines to produce a pattern.'" *H.J., Inc.*, 492 U.S. at 239 (citations omitted). These predicate acts refer to "acts indictable under any one of more of certain specified criminal laws", including mail and wire fraud. *Feinstein*, 942 F.2d at 42. In this regard, this Court has held that there exists such continuity of predicate acts in two instances: 1) "if they either comprise a closed series of past conduct that extends over a substantial period of time" or 2) if they "indicate a realistic prospect that they will extend indefinitely into the future." *Westernbank de Puerto Rico*, 2009 WL 4730776, at *4. These are referred to as the "closed-ended approach" and the "open-ended approach", respectively. *Id* at *8 (citing *H.J., Inc.* 492 U.S. at 242). In both instances, these acts have to show that "the threat of continued activity" is the result of the predicate acts. *Id*.

The First Circuit has stated that "one scheme that extends over a substantial period of time, or that shows signs of extending indefinitely into the future, can establish a pattern." *Efron*, 223 F.3d at 16. However, it is important to note that "predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement", unless Plaintiff demonstrates that "the predicates are a regular way of conducting defendant's ongoing

legitimate business. . . ." *Westernbank de Puerto Rico*, 2009 WL 4730776, at *8; *H.J., Inc.* 492 U.S. at 242.

In the case at bar, Plaintiff claims that Defendants incurred in illegal tax collection during the almost four months that the Executive Order prohibiting this tax collection was in effect. (*See* Docket No. 18 at 9). However, save for the illegal tax collection incident that occurred on November 4, 2017,[6] Plaintiff does not provide details as to other similar incidents that may constitute predicate acts. For this reason, this Court "must assume for purposes of RICO analysis that the only predicate [act] relevant to [Plaintiff]'s claim" was the November 4, 2017 incident, in which he was charged the sales tax. *See Fleet Credit Corp. v. Sion*, 893 F.3d 441, 444-45 (1st Cir. 1990). This incident alone is not sufficient to meet the pattern requirement in a RICO claim.

As this Court stated above, to meet the pattern element in a RICO claim the Plaintiff must, not only prove the existence of two or more predicate acts, but also demonstrate that these acts have been committed in a time period that exceeds a mere few months. *Westernbank de Puerto Rico*, 2009 WL 4730776, at *8 (citing *H.J., Inc.* 492 U.S. at 242). Although Plaintiff infers that Defendants must have illegally charged others the sales tax in question, the only concrete details and specifications that Plaintiff has provided in regarding the unlawful sales tax collection is his own experience. This allegation "does not demonstrate the kind of broad or ongoing criminal behavior at which the RICO statute was aimed." *Efron*, 223 F.3d at 18. One isolated incident such as the one presented in this case, without much else, can in no way survive a motion to

---

[6] *See* Docket No. 18 at -10-11.

dismiss.[7] For this reason, the Court determines that the pattern element of 18 U.S.C. § 1962(c) has not been met. As such, Plaintiff's § 1962(c) claim must fail.

### B. Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1962(d)

As an alternate claim, Plaintiff contends that Defendants conspired to commit the illegal sales tax collection scheme during the period in which the Executive Order was in place. (*See* Docket No. 18 at 24). This type of claim is covered by 18 U.S.C. § 1962(d), which states: "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." Due to the parallel nature of the *Efron* case, this Court adopts the expressions of the First Circuit contained therein, stating that "[a] conspiracy claim under section 1962(d) may survive a factfinder's conclusion that there is insufficient evidence to prove a RICO violation, . . . but if the pleadings do not state a substantive RICO claim upon which relief may be granted, then the conspiracy claim also fails." *Efron*, 223 F.2d 12, 21 (1st Cir. 2000). This is the instant case. Since Plaintiff was unable to successfully state a RICO claim under section 1962(c), the conspiracy claim is inadmissible. Therefore, Plaintiff's § 1962(d) claim also fails.

### IV.   CONCLUSION

Taking the complaint in the light most favorable to the Plaintiff, the Court finds that the Amended Complaint fails to state a plausible claim of fraud under the RICO Act. The Defendants' *Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure* is **GRANTED**. The remaining claims that Plaintiff has brought forth in his Complaint, namely those under local law as to unjust enrichment, conversion, and fraud, have been brought forth as

---

[7] See generally *Efron*, 223 F.3d at 12 (where the First Circuit affirmed the District Courts determination that seventeen incidents of wire and mail fraud over a twenty-one month period did not constitute a pattern of racketeering activity, under 18 U.S.C. § 1962) ("[T]he acts as alleged comprise a single effort, over a finite period of time, to wrest control of a particular partnership from a limited number of its partners. This cannot be a RICO violation.").

supplemental jurisdiction claims under 28 U.S.C. § 1367. The Court's exercise of supplemental jurisdiction in a case in which there is no cause of action under a federal statute is discretionary. See 28 U.S.C. § 1367(c)(3). The First Circuit has stated that "[t]he Supreme Court has made pellucid 'that in the usual case in which all federal-law claims are eliminated before trial, the balance of factors. . . will point toward declining to exercise federal jurisdiction over the remaining state-law claims." *Rivera-Diaz v. Humana Insurance of Puerto Rico, Inc.*, 748 F.3d 387, 392 (1st Cir. 2014) (quoting *Carnegie-Mellon Univ. v Cohill*, 484 U.S. 343, 350 n. 7 (1998)).

Further, the First Circuit has also addressed the case wherein the federal court must reassess its jurisdiction in regard to jurisdiction over state claims. See e.g.: *Camelio v. American Foundation*, 137 F.3d 666, 672 (1st Cir. 1998), wherein the First Circuit stated that "[i]f . . . the Court dismisses the foundational federal claims, it must reassess its jurisdiction. . . . 'Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.'" *Id.* (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). See also *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1176-77 (1st Cir. 1995) (wherein the First Circuit expressed that when the court dismisses the state claims without prejudice should federal claims are dismissed). Moreover, regarding cases such as the instant case, the First Circuit has determined that when federal jurisdiction "hinges on the viability of [a 18 U.S.C. § 1962 claim]" the pending state-law claims must be dismissed without prejudice. *Feinstein*, 942 F.2d at 47 (citing *Gibbs*, 383 U.S. at 726). Hence, in the case at bar, the Court chooses not to exercise supplemental jurisdiction over the pending state claims.

Accordingly, Plaintiffs federal claim pursuant to the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1962, is hereby **DIMISSED WITH PREJUDICE**, while

Plaintiff's law claims presented under supplemental jurisdiction are **DISMISSED WITHOUT PREJUDICE**. Judgment to be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 22nd day of October 2019.

*/S/ Daniel R. Domínguez*
United States District Judge